Lee, J.
That the effect of the disposition made by John Hudnall of his real estate by his will was, in the view of the court of equity, to change its character and as between the representatives of the realty and the personalty of those who were to take under the will, to render it transmissible as money, is agreed by the counsel for the appellants and for the appellee *374 Samuel Harcum. Nor could this be successfully .questioned on be half of the children of Mrs. Harcum. It is a familiar doctrine of that court that land articled or devised to be sold and converted into money, or money articled or bequeathed to be invested in land shall assume the very character of the property into which it is to be converted; and if the new form thus impressed upon it remain unchanged, it will pass to such of the representatives of those who take under the will as would be entitled to it as property of the character into which it is to be converted. 2 Story’s Eq. Jur. § 790, 1212; Fletcher v. Ashburner, 1 Bro. Ch. Cas. 497, and editor’s note; Craig v. Leslie, 3 Wheat. R. 563, and cases cited by Judge Washington. And land thus directed to be converted into money, will pass as money although the actual conversion by a sale may not yet have been effected; and if the will directing the conversion also dispose of the proceeds, the gift of the proceeds is to be considered as a gift of personal estate. Tazewell v. Smith's adm'r, 1 Rand. 313; Pratt v. Taliaferro, 3 Leigh 419; Craig v. Leslie, ubi supra; Ashby v. Palmer, 1 Meriv. R. 296.
But though the subject thus directed to be converted is thus stamped with the character of the property into which it is to be converted, the party entitled to the beneficial interest may elect to prevent the actual conversion, and to hold it in the form in which he found it; and this election he may make by application to the court of equity or by unequivocal acts or declarations plainly manifesting his determination. Cruse v. Barley, 3 P. Wms. 22, n. 1; Edwards et ux. v. Countess of Warwick, 2 P. Wms. 171, 175, n.; Craig v. Leslie, ubi sup.; 2 Story’s Equ. J'ur. § 793. If however he die without having made an election, the property will pass to his heirs or personal representatives just as it would have passed if the purpose *375 of the will or other instrument under which he claimed had been fully carried into effect and the conversion actually made before his death. Kirkman v. Miles, Ves. R. 338; Edwards et ux. v. Countess of Warwick, 2 P. Wms., ubi supra; Craig v. Leslie, 3 Wheat. 563, 577 et seq.; 2 Story’s Equ. Jur. § 793, and authorities cited in n. 1.
Thus in a controversy between the heir and personal representative of a pai'ty who was beneficially entitled to a subject thus directed to be converted, as to the succession to the property, it becomes material to ascertain whether such party had made an election to retain the subject as it was and dispense with the actual conversion, as it is not the mere right to make the election, but the actual exercise of the right, which changes the character of the subject and makes it either real or personal at the will of the party entitled to the whole beneficial interest. Craig v. Leslie, ubi supra; 2 Story’s Equ. Jur. ubi supra, and n. 1, and authorities there cited.
In this case I think nothing appears sufficiently manifesting an intent to elect by any of the parties interested. The only thing that looks at all like such election was the failure of the parties to cause the sale to be made at an earlier period and the retention of the property so long in the form of realty. But by the will of the testator the property could not be sold until John J. Hudnall attained the age of twenty-one years which was not until the fall of 1839, and from the retention of the property afterwards in the same form unaided by other circumstances or any express declaration, the intent to elect is not necessarily to be inferred. The acts or declarations which shall constitute an election must clearly manifest the determination to make it. Willing v. Peters, 7 Barr (Pa. R.) 287; 2 Story’s Equ. Jur. § 793. And the mere continuing to hold and rent the property is not inconsis *376 tent with the intent to carry out the direction of the testator and to have a sale of the property at some period. It may have been deemed expedient to defer the sale in the hope of receiving a larger dividend by an impi’ovement in the value of real estate. Moreover, in order to make a valid election all who were jointly interested must have concurred. Willing v. Peters, ubi sup.; Fletcher v. Ashburner, 1 Bro. Ch. C. 497, opinion of Sir Thomas Sewell (master of the rolls); Allison's ex'or v. Wilson's ex'ors, 13 Serg. & Rawle 330, opinion of the court delivered by Gibson, J. In these opinions it is distinctly stated that where an estate is directed to be sold and the proceeds divided amongst several persons, none has a right to say that any part shall not be sold, and that one having an undivided interest in the subject cannot compel those who are associated in interest with him to take in land what was bequeathed to them in money. And accordingly it was held in Willing v. Peters, above cited, that all who are jointly interested must unite in the act of election, otherwise it is nugatory.
Now it would seem that Margaret Hudnall did not consider that she had made any election to take land instead of money, for in her will dated in 1840, she speaks of steps having been taken to obtain a sale of the land by a decree, and gives her portion of the proceeds or her share of the land if it should not be sold, to her sister Mrs. Harcum. And in 1853 John J. Hudnall who had for many years previously resided in New Orleans, filed his bill claiming the right to have a sale of the property and a division of the proceeds, alleging that since he arrived at the age of twenty-one years, •the period at which the land was directed to be sold, there had been no representative of his father’s estate, and no one authorized to sell the land. Not a single act or declaration evincing the purpose to make an election can be imputed to either beyond the bare ac *377 quiescence in the retention of the subject in the form of real estate after John J. Hudnall became of age, and this may be sufficiently explained by the i stances.
No discrimination appears to be made in this doctrine of “equitable conversion,” between the case of a conversion which is not required to be made at any particular period and which therefore in the case of a will, should be made presently after the death of the testator, and one in which the conversion is to be made at some future period prescribed. In the latter case “ we must consider the property as converted from the time when it ought to have been converted.” Per Cranworth, Lord Chancellor, Ferrie v. Atherton, 28 Eng. Law and Eq. R. 1. Here the will directed in effect that the conversion should be made when John J. Hudnall arrived at the age of twenty-one years, and equity will regard that which ought to have been done as having been actually done and consider the property devised as stamped with the character of money from and after that period, and as so continuing afterwards in the absence of an election by all those jointly interested to take the testator’s bounty in the form of real estate.
We must conclude therefore that the interest which Mrs. Harcum took under the will of her father was an interest in money, the proceeds of the sale of the property whenever the same should be made, and that at her death nothing in this subject could pass to her children as her heirs at law. And this is equally true of the interest which she took under the will of her sister Margaret, and as one of the heirs at law and distributees of her brother Thomas. Margaret by her will made after her brother John became of age, gave her whole interest to her sister Mrs. Harcum ; and as the period for the conversion of the property had arrived, it was clearly a bequest of money, her share of *378 the proceeds of the sale. Thomas Hudnall died be-tore his brother John attained his majority, and before actual conversion of the property by a sale could made; and if his interest for that reason is to be regarded as in the realty and descendible to his heirs, they would nevertheless take it subject to be converted into money by a sale, just as he held it, and as they held their respective interests in the same subject, under the will of their father. If it be regarded as personalty, it might now be successfully claimed by his administrator Straughan if it were needed for payment of any debts due from his estate; and Straughan as administrator of Margaret Hudnall might also lay claim to have her interest paid to him if any such exigency of her estate required it. But Thomas Hudnall died an infant, unmarried, intestate and without issue, and in the absence of any suggestion to the contrary, it will be presumed that he owed no debts. Myers v. Wade, 6 Rand. 444, 448, opinion of Green, J. Leroy Harcum administered upon the estate of Margaret Hudnall and as it appears, settled the affairs of the same in his lifetime; and as Straughan in his answer or elsewhere, makes no suggestion that there were any debts due from the estate of Margaret, it should be taken that there were none. The interest of Thomas would then be properly distributed among his surviving sisters and brother, and Mrs. Harcum might take directly her sister’s third of the whole under her will in addition to her own, without regard to the claim of Straughan as administrator of Thomas and Margaret.
Thus the case is resolved into a controversy between the administrator of Leroy Harcum, the first husband, and Samuel Harcum the second husband and personal representative of Mrs. Harcum whom he survived. The interest of Mrs. Harcum was not an estate in the premises, but a mere chose in action, a right to have a *379 sale of the property and to receive her two-thirds of the proceeds. Willing v. Peters, ubi sup. If Leroy Harcum during his life did any thing that can be cepted as a reduction of this chose into possession or as the equivalent, it thereupon became his property and his administrator would be now entitled to recover it. If otherwise, then upon his death it survived to Mrs. Harcum, and upon her death Samuel Harcum her second husband who qualified as her administrator became entitled to receive it. Coke Litt. 351; 1 Bright on Husband & Wife, ch. 4, § 1, p. 34; Id. § 4, p. 41; Siter, &c. v. McClanachan, 2 Gratt. 294.
It appears that after Leroy Harcum’s intermarriage with Elizabeth Hudnall, which took place in 1835 or 1836, he and Samuel Harcum (as guardian, it is to be inferred, for John J. Hudnall during his minority and as his agent afterwards), rented out the land, conjointly, and received the rents. Margaret Hudnall during her life received her third of the rents, and after her death her portion was appropriated by Leroy Harcum along with his wife’s third. And it is urged for the appellants that this was such a reduction into possession on the part of Leroy Harcum as vested the property in him because the subject being in the form of real estate until a sale took place it was not susceptible of any other possession.
No case has been cited, nor in my examination have I seen any, presenting the question as to a subject situated precisely like the present. There are however some cases to be found bearing a strong analogy to this and which will serve to aid in its elucidation.
The acts to effect a reduction into possession of the wife’s chose in action must be such as to change the property in it or something to divest the wife’s right and to make that of the husband absolute ¡ such as a judgment in an action commenced by him in his own name, or a receipt of the money or a decree that it be *380 paid to him or applied to his use. Prec. in Ch. 412, 418; Schuyler v. Hoyle, 5 John. Ch. R. 196; 1 Bright, ch. 5, sect. 1, p. 48. In Yerby et ux. v. Lynch, 3 Gratt. 460, the question was whether settling with a guardian an(j administratrix and taking a bond to the husband for the amount due his wife was a reduction of the chose into possession of the husband; the court however was equally divided. In the course of his opinion, Judge Baldwin said that by suing out execution upon a judgment recovered in the name of himself and wife, the husband divested the interest of the wife. He referred to Clancy on Bights, 113 to 116. This proposition is controverted by a learned writer who maintains that it is entirely unsupported by authority. 3 Bob. N. P. 206. However this may be, Leroy Harcum, in his lifetime effected no change of the condition of this property, he obtained no decree that his wife’s interest should be paid over to him or applied to his use. He received the rents and thus reduced them to possession : but he did not and could not appropriate the principal subject. He took no step to obtain such a decree as would have vested the property in himself. He made no demand on Harding the administrator, who if living might have made sale of the property, to make it; nor if he were dead or refused, did he file a bill to execute the trust. He contented himself with receiving the annual rents. Now if he could have done nothing more during John J. Hudnall’s minority towards a reduction of the subject into possession, the same cannot be said of the period that elapsed after John J. Hudnall attained his majority. Leroy Harcum lived some three years after that event, and might readily have obtained a decree which would have vested the property in himself. But to any proceeding instituted to obtain such a decree, he would have had to make his wife a party. For although as all rights of personalty and causes of action accrued *381 to the wife or to husband and wife jointly, during the coverture, he may, if he will, sue in his own name alone, yet as to such rights and causes of action as accrued before the coverture including negotiable instruments (though as to them the rule was formerly different), it is now well settled that he cannot maintain an action at law to recover them without joining his wife as a party. Hardy v. Robinson, 1 Keb. R. 440; Milner v. Milner, 3 T. R. 627; Rumsey v. George, 1 Mau. & Sel. 176; Richards v. Richards, 2 Barn. & Ald. 447, 22 Eng. C. L. R. 119; Sherrington V. Yates, 12 Mees. & Welsb. 855; 1 Bright, ch. 5, sect. 4, p. 63, 64. Here as the interest of the wife was in the nature of a legacy, to obtain which the aid of a court of equity must be invoked, it would a fortiori, have been necessary that the wife should be joined in any proceeding in the court to obtain it. Blount v. Bestland, 5 Ves. R. 515. And the criterion by which to determine whether the wife may join in the action is whether the right of action would survive to her upon the death of her husband in her lifetime. Ayling v. Whichner, 6 Adol. & Ell. 264; 1 Bright, ch. 5, $ 4, p. 63.
The rents issuing out of the property before the sale belonged to the same persons who were entitled to the principal subject and would go to them in common with the moneys arising from the sale, as personal property. Yates v. Compton, 2 P. Wms. 308; Doughty v. Bull, Id. 320. And as already stated, those received by Leroy Hareum in his lifetime were thus reduced into his possession and became his absolute property; but it does not follow that therefore the principal subject was thus reduced into possession. After the death of Leroy Hareum, Mrs. Hareum continued to receive the rents in the same way, and after her marriage with Samuel Hareum he received them by virtue of his marital rights. Thus the acts of Samuel Hareum after his marriage with Mrs. Hareum, constituted as much *382 a reduction of the subject into possession as did those of Leroy Harcum, for the reason that the property remained just as it was throughout the whole period, including the widowhood of Mrs. Harcum, without any change having been effected in its condition. None of these parties had any estate in the land under the will or any interest which could be the subject of a lien by a judgment or could be reached by a creditor with an execution against his lands. Allison's ex'or, v. Wilson's ex'ors, 13 Serg. & Rawle 330; Morrow, use &c. v. Brenizer, 2 Rawle’s R. 185; Willing v. Peters, 7 Barr’s R. 289, et seq. and cases cited in the opinion of Bell, J. Nor did the receipt of the rents by either change the character of the subject or confer upon him any other or different interest than he already had. If it had constituted a reduction into possession by Leroy Harcum, it would be unnecessary for his representative to come into court now and ask it to give him possession.
The receipt of interest by a husband upon a chose in action belonging to his wife, has not been held to be such a reduction into possession as would vest the chose in him and defeat the wife’s right by survivor-ship. Thus where a sum of money was charged in favor of a feme sole upon her brother’s estate, and he upon occasion of her marriage covenanted in a settlement to pay it to her husband, and the husband received the interest for some time after the marriage but died without having collected the principal, it was held that although the husband during the coverture might have released or discharged it, yet not having done either, upon his death it vested in the wife by survivorship. Howman v. Corie, 2 Vern. R. 190, and n. 1. So where a promissory note bearing interest was given to a woman before coverture, and after her marriage her husband received the interest upon it during her life, it was held that the note was not *383 thereby reduced into his possession, but passed to her administrator. Hart's adm'r v. Stephens, 6 Ad. & El. N. S. 937, 51 Eng. C. L. R. 537. In Nash v. Nash, 2 Madd. R. 133, a promissory note for ten thousand pounds payable on demand was given to a woman after her marriage, and she delivered it to her husband who received one thousand pounds of the principal and also received the interest on the remaining nine thousand pounds up to his death. His wife survived him, and it was held by the vice chancellor (Sir T. Pliimer) that this was no reduction of the chose into possession, but that the right to the nine thousand pounds belonged to the wife by survivorship.
In Hart's adm'r v. Stephens, 6 Ad. & El. 937 (51 Eng. C. L. R. 537), Patterson, J. speaking for the court, says that for the proposition that the receipt of interest by the husband on a note belonging to his wife will serve to reduce it into possession, “ we think there is no foundation.” The observations of Lord Ellenborough in giving judgment in McNeilage v. Holloway, 1 Barn. & Ald. 218, which were supposed to favor that doctrine, have been considered too strong and disapproved of in subsequent cases. See Richards v. Richards, 2 Barn. & Ald. 447; and Gaters v. Madely, 6 Mees. & Welsb. 423.
The cases which I have thus cited and briefly stated, seem to me to be not stronger against the husband’s claim, in principle, than the case in judgment, and to my mind their tendency is very direct to deny to the receipt of the rents by the husband in such a case as the present, the effect of a reduction of the subject into his possession so as to defeat the wife’s right of survivorship. Nor will the case be helped by a reference to the doctrine touching the husband’s interest in his wife’s chattels real. To these the law gives the husband a qualified title with a right to the possession and enjoyment of the subject and a power of *384 alienation during the coverture. If he dispose of his wife’s terms for years by a complete act in his lifetime, her right by survivorship will be gone, and'this whether his disposition was with or without consideration, and whether the legal estate in the terms was in the wife or was held in trust for her benefit. Grute v. Locroft, Cro. Eliz. 287; Tudor v. Samyne, stated in note to Scarborough v. Borman, 4 Mylne & Craig 389; Sir Edward Turner’s Case, 1 Vern. R. 7; S. C. 1 Ch. Ca. 307; Carteret v. Paschal, 1 P. Wms. 197; Mitford v. Mitford, 9 Ves. R. 87, 98, opinion of Sir William Grant. But if the husband do not alien the terms and survives his wife, he takes them by virtue of his marital rights. Co. Litt. 46, b, 351, a; 1 Bright, ch. 8, s. 1, p. 94. But notwithstanding the husband’s possession and enjoyment of the terms during the coverture, if the wife be the survivor and the terms remain in statu quo and unchanged, she and not the husband’s next of kin will be entitled to them ; and even his disposal of them by will will not prevail against her right by survivorship; for as this takes effect immediately upon his death, it takes precedence of the bequest in the will which cannot take effect until after his death. Co. Litt. 351; 1 Bright, ubi sup. and p. 95.
In every view that I have been enabled to take of this question, I think that upon the death of Leroy Harcum, the right to Mrs. Harcum’s share of the proceeds of the property survived to her; that upon her death it passed to her second husband Samuel Harcum, who also qualified as administrator to her estate, and that the Circuit court did not err in directing the same, being two-thirds of the whole, to be paid to him. And I am therefore of opinion to affirm the decree.
The other judges concurred in the opinion of Lee, J.
Degree affirmed.