Mr, Justice Washington
delivered the opinion of the court. The incapacity of an alien to take, and to hold beneficially, a legal or equitable estate in real property, is not disputed by the counsel for the plaintiff; and it is admitted by the counsel for the state of *577 Virginia, that this incapacity does not extend to personal estate. The only inquiry,, then,-which this court has to make is, whether the aboye clause in the will of Robert Craig, is to be construed, under all the circumstances of this case, as a bequest to Thomas Craig of personal property, or as a devise of the land itself?
. Equity con. siders land, diu> be verted into the purchase of land, ab land, Where the *>hole benefidal interest in the land in one Money in tí!e to'th'c ^person foe whose use it is given, a court of eguity ««tu? íue'íVusí the conversion W *
*577 Were this a new question, it would seem extremely difficult to raise a dou.bt respecting it. The common sense of mankind would determine, that a devise of moriey, the proceeds of land directed to be sold, isa devise of money, notwithstanding it is to arise^ out of land; and that a devise of land, which a testator by his will directs to be ( purchased,, will pass an interest in the land jtself, without regard to the -character of the fund out jf which the púrchase is to be made,.
The settled doctrine of the courts of equity corres1 J pond with this obvious construction of wills, as as of other 'instruments, whereby land is directed to be turned into money, or money into land, for benefit of those for whose use the conversion is ded to be made. In the case of Fletcher v. Ashburner, (1 Bro. Ch. Cas. 497.) the master of the rolls says, that “nothing is ’ better established than this principle, that money directed to be employed in the purchase of land, and land directed to be sold and turned into money, are to be considered as that species^ of property into which they are'directed to be converted, and this, in whatever manner the direction is given.” He adds, “the owner of the fund, or the contracting parties,' may make land money, or money *578 ¡and. The eases establish this rule' universally.** This declaration is well warranted by the cases to» which the master of the rolls refers, as well as by many others. (See Dougherty v. Bull, 2 P. Wms. 320. Yeates v. Comptan, Id. 358. Trelawney v. Booth, 2 Atk. 307.
The principle upon which the whole of this doctrine is founded is, that a-court of equity, regarding the substance, and not the mere forms and circumstances of agreements and other instruments, considers things directed or agreed to-be done, as having been actually performed, where nothing has intervened which ought tó prevent a performance. This qualification of. the more concise and general rule, that equity considers that to be done which is agreed to' be- done, will comprehend the cases which coia¡e under this head of eTli{D
Thus, where the whole beneficial interest in the mo- . . . , ney in the one case, or in the land m the other, belongs to the person for whose use it is given, a court of equity will not compel the trustee to execute the -trust' against the wishes of the cestuy que trust, but will per-n _ .si mit him to'take the money or the ■ land, if he elect to" do so before .the conversion has' actually been made : this election he may make, as well by acts or dec" c^earty indicating á d termination to that effeet,-'as by application to a court of equity. It is this election, and not the mere right to make it, which changes the character of the estate so as to make it real or personal, at the will of the party entitled to the beneficial interest.
BUt ¡jfé«¡J^^his eUc* tion, the pro-to^ls • ifeirs' “ in the same manner as .it would have done >1 the con, version had
time. If this election be not made in time to stamp the property with a character different from that which the will or other instrument gives it, the latter accompanies it, with all its legal consequences, into the hands of those entitled to it in that character. So that in case of the death of the cestuy que trust, out having determined his election, the property, will pass to his heirs or personal representatives, in the same manner as it would have done had the trust been executed, and the .conversion actually made in his life
In the case of Kirkman v. Mills, (13 Ves.) which was a devise of real estate to trustees %npon trust to sell,'and the'moneys arising, as well as the rents profits till the sale, tobe equally divided between the testators, three daughters, A. B. and C.' The estate' was, upon the death of A. B. and C., considered and treated as personal property, notwithstanding the jcestuy que trusts, after the death of the testator, had entered upon, and occupied the land for about twro years prior to their deaths; but no steps had been taken by them, or by the trustees, to sell, nor had any requisition to that-effect been made by the former to the latter. The master of the rolls was of opinion that the occupation of the land for two years was too short to presume an election. He adds, “the opinion of Lord Rósslyn, that property was to be taken as it happened to be at the death of the party frorp whom the representative claims, had been much doubted by Lord Eldon, who held, that without some act, it must be considered as be.ing in the state in *580 which it ought to be; and that Lord Rosslyn’s rulé was new, and not according to the prior cases,
'The case of Roper v. RadI87?e’xamined.to
The same doctrinéis laid down and maintáined in the.case of Edwards v. The Countess of Warwick (2 P. Wms. 171.) which was a covenant on marriage to invest 10,000Z., part ofthe lady’s fortune, in the pur . .chase of land in fee, to be settled on the husband fo life, remainder to his first and every other son in tai male, remainder to the husband in fee. The only-son of this marriage having died without issue, and 'in testate, and the investment ofthe money not having been made during his life, the chancellor decided that the money passed to the heir at law ; tha,t it was in the election of the son to have made this, money, or to "have disposed of it as such, and that, therefore, even his parol disposition of it would have been regarded i but that something to determine the election must be done.
This doctrine, so veil established by the cases which have been referred to, and by many others' which it is unnecessary to mention, seems to be' conclu . ■ . ,. , . , ,, . . . ., , sive Upon the question which this court is called upon decide, and would render any farther investigation ofit useless, .were it not for the case of Roper v. Radcliffe, which was cited, and mainly relied upon, the counsel for the state of Virginia.
The short statement of that case' is as follows j John Roper conveyed all his lands to trustees and their heirs, in trust, to sell the same, and out ofthe proceeds, and of the rents and profits till sale, to pay certain debts, and the overplus of the money to be paid as he, the said John Roper, by his will or other *581 wise should appoint, and for want of such appointment for the benefit of the said John Roper, and his hqiisBy. his will reciting, the said deed, and the power reserved to him in the surplus of the said real estate, he ,bequeathed several pecuniary legacies, and then gave the residue of his real and personal est te to William Constable and Thomas Radcliffe, and two. o./iers, arid to their heirs. By a codicil to this will, he bequeathed other-pecuniary legacies; and the remainder,'whether in lands or personal estate,- he gave to the .said. W. C‘ and T. R.
Upon a bill filed by W. C. and T. R. against the heir at law of John Roper, and -the other trustees, praying to have the'trust executed, and the residue of the money arising from the sale-of the'.lands to be paid over to them ; the heir at law opposed the execution tpf the trust, and claimed the land as a resulting trust,* upon the ground of the incapacity of*Constable and Radcliffe to take; théy being papists. The decrée-of ,the court of chancery, -which was in favour of the papists, was, upon appeal to the house of lords, reversed' and the title of the heir at law sustained; six judges against five, being in his favour.
Without stating at large the opinion upon which the reversal took place, this court will proceed, 1st; To examine thu general principles laid down in that'opinion ; and then, 2d. The case itself, so far as it has been' pressed upon us as an authority .to rule the question be • fore the court.
In performing the first part of this undertaking, it will not be necessary to' question any one of the premises laid down. in that opinion. They are, *582 1. That land devised to trustees, to sell for payment of debts and legacies, is to be deemed as money. ThA is the general doctrine established by all the-cases referred to in the preceding part of this opinion. That the heir at law has a resulting trust in such so fair as it is of value, after the debts and lega- ; 7 . . cíes are paid, and that he may come into equity and restrain -the trustee from selling more than is neces- *° Pay'Uie debt and legacies ; or he may offer to them himself, and pray to have a conveyance of J . , ,. part of the land not. sold in the first case, and th® whole in the latter, which property will, in either case»1 land, and not money. This right to call for a conveyance velT correctly styled a privilege, and it one which a court of equity will never refuse, unless ' there are strong reasons for refusing it. The this doctrine, proceeds upon a principle is incontrovertible, that w'here the testator 5 merely directs the real estate to be converted into ' , . , money, for the purposes directed in his will, so much °f the estate, or the money arising from it, as .is not efEectually disposed of by the will, (whether it arise from some omission or defect in the will ilself, or . from any subsequent accident, which prevents the devise from taking effect,) results to the heir at law, as the old use not disnosed of. Such was the case of Crewe v. Bailey, (3 P. Wms. 20.) where the testator having two sons, A. and B. Qand three daughters, devised his lands to be. sold to pay his debts, &c. and as to the moneys arising by the sale, after debts paid, gave JB200 to A. the eldest son, at the age of 21, and ^he fesidue to bis four younger children. A. died be *583 fore the age of 21, in consequence of which, the bequest to him failed to take, ^effect. The court decided that the £200 should be considered as land to descend to the heir at law of the testator, because it was in effect, the sáme as if so much land as was of the value of ,£200 was not directed to be sold, but was sufferred to descend. The, case of Ackroyd v. Smithson, (1 Bro Ch. Cas. 503.) is one of the same kind, and .establishes the same principle. So, likewise, a money provision under, a marriage con-' tract, to arise out of land, which did not take effect,, on account of the death of the party for whose benefit it was intended, before the time prescribed, resulted as money to the grantor, so 'as to pass under a residuary clause in his will. (Hewitt v. Wright, 1 Bro. Ch. Cas. 86.).
Land «1 to to sell for payment of debts to Adeemed
law has a suiting trust such lands, and legacies may com'e into ■Sihithetrus" tee from sulkcient to nwy^offer pay them self, and pray a conveyance of the part of the land not qpse^'and ^tlfe latter which property in either case will be Zand and not money.
°te» appears to harfljpeeii to stamp upon oMh/ianTd? ly<)f persunai ty,not only/or particular IvM^but toaU ^aim S’of the-at trtStt.- is deestate’is cons? personaí!* be
But even in cases of resulting trusts, for the fit of the heir at law, it is settled that if the . of the testator appears to have been to stamp upon the proceeds of the land described to be sold, the quality of personalty, not only to subserve the ticular purposes of the will, but to all intents, the r r ’ claim of the heir at law to a resulting trust is ed, and the estate is considered to be personal. This was decided in the case of Yeates v. Compton, (2 P. Wms. 308.) in which the chancellor says, that intention of, the will was to give away all from the heir, and to turn the land into personal estate, and that this was to be taken as it was at the testator’S death, and ought not to be altered by any subsequent accident, and decreed the heir to join in the sale •f. the • land, and the money. arising therefrom to be *584 paid over as personal estate to the representatives of the annuitant, and to those of the- residuary legatee. In. She case of Fletcher v. Ashburner, before referred to, the -suit was brought by the he.ir at law- of the. testator, against the personal representatives and the trustees claiming the estate upon the ground of a resulting trust. But.the court decreed the property, as money, to the personal representatives of him- to • whom the beneficial interest in the money was bequeathed, and the master of the rolls observes, that the cases of Emblyn v. Freeman, and Crewe v. Bailey are those where real estate being directed to be sold, some part of .the disposition has failed, and the thing devised has not accrued to the representative, or dévisee, by which something- has re-> suited to the heir at law.
■' It is evident, therefore, from a view of the above bases, that the title of the heir to a resulting trust can never arise, except when something is left undisposed of, either by some defect in the will, or by some subsequent lapse, which prevents the devise from taking effect; and not even then,-, if it appears that-the in-. tent-ion of the. testator wa's' to change the nature of the estate from land to money, absolutely and entirely, and not merely to serve the purposes of the will. But the ground upon which the title of the heir rests is, that whatever is not disposed of remains to him, and partakes of the o'ld use, as if it had not been directed to.be sold.
The third proposition laid down in the case of Roper v. Radcliffe, is, that equity will extend, the same privilege to the residr.ary legatee which is allowed *585 to the heir, to pay the debts and legacies, and call for a conveyance of the real estate, or to restrain the.trustees from selling more than is necessary to pay ihe debts and legacies.
Equity will extend the toThe re'sTduawhich’i^fííow ofiegacies, conveyance of ni<>r® than i» necessary *6 pay the debts 1®s't<a®s'
■. The condu^ed from**the thJtrin¡c^ respect to th* residuary lega tee such a do cimWered as soecjjklegatees
This has, in effect, been admitted in the preceding part of this opinion; because if the cestui que trust, of the whole beneficial interest in the mopey to- arise trom the sale of the land, may claim this privilege, it follows, necessarily, that the residuary legatee because he is,, in effect,, the beneficial' owner the whole, charged with'the 'debts and legacies., from which he will be permitted to discharge it, by ing the debts and legacies, or may claim so much the real estate as-may not be necessary for that pur- • pose.
But the court cannot accede to the which, in. Roper v. Radcliffe, is deduced from the establishraent of the above principles. That sion is, that in respect to the residuary legatee, such a devise shall be deemed as land in equity, though in respect to the creditors and specific legatees it is . , • , , . • de&med as money. It. is admitted, with this qualm. cálion, that, if the residuary legatee thinks proper to avail himself of the privilege of taking it as land, by fáakihg an election in his life time, the property will then assume the character of land. But. if. he does liót máte this election, the property .retains its racter of personalty to every intent and purpose. — The cases before cite'd seem to the court to be'conclusive Xtpon this point; and none were referred to, or have come under the view of the court, which *586 sanction the conclusion made m the unqualified terms. used in the case of Roper v. Radcliffe.
Aa to the idea that the ’character of the estate is affected by this right of election whether the right be claimed, or not, it appears to -be as repugnant to reason, as we think it has. been shown to be, to principle and authorities. .Before any thing can be made of the proposition, it. should be shown that this right or privilege of election is so indissolubly united with the devise, hs to constitute a part of it, and that it may be exercised in all_ cases, and under all circumstances.— This was, indeed contended for with great ingenuity and abilities by the counsel for the state of Virginia, blit it was not proved io the satisfaction of the court.
It certainly is not true, that equity will extend this privilege in all cases to the cestui que trust It will be refused if, he be an infant. In the case of Seely v. Jago, (1 P. Wms. 389,) where money, was devised to belaid out inlandnn fee, to be séttledJon'A. B. and C. and . their heirs, equally to be divided;. On the death of A., his infant heir, together with B. and C., filed their, bill claiming to . have the money, which was decreed accordingly as to B. and C.; .but the share of the infant was ordered to be puf out for: his benefit,, and the reason .assigned was, that he was incapable if marking an election, and that such election, if permitted, would, in case of his death, be prejudicial. to his heir.
In the case of Foone v. Blount, (Cowp. 467.) ItOjd Mansfield,.who is-compelled to acknowledge-the authority of Roper v. Radcliffe in parallel cases, *587 combats the reasoning of Chief. Justice Parker upon this doctrine of election, with irresistible force. He suggests, as the true answer to it, that though in a variety of cases this right exists, yet it was inapplicable to the case of a person who was disabled by law from taking land, and that therefore a court of equity would, in such a case, decree that he should take ¿he property as .money.
The case of Walker v. Denne, (2 Ves. Jun. 170.) seems to apply with great force to this part of our subject. The testator directed money tobe laid out in lands, tenements, and hereditaments, or on long terms, with limitations applicable to real estate. The money not having been laid out, the crown, on failure of heirs, claimed the moneyas land. It was decided that the crown had no equity against the next of kin to have the money laid out in real estate in order to claim it by escheat. It was added, that the devisees, oh becoming absolutely entitled, have the option given by the will'; and a déed of appointment by one of the cestui que trusts, though nfeme covert, was held a sufficient indication of her intention that it should continue personal, against her-heir claiming it as ineffectually disposed of for want of her examination. This case is peculiarly strong, from the circumstance, that the electtion is embodied in the devise itself; but this was •not enough, because the crown had no equity to force an election to be made for the purpose of producing an escheat.
Equity would surely proceed contrary, to its regular course, and . the principles which universally govern U, to allow the right of election where it is dt *588 sired, and can be lawfully made, and yet- refuse to decree the money upon the application of the-alien, upon no other reason, but because, by law, he is'incapable to hold, the land; in short, to consider Kim in the same situation as if he had made an election, -which would have been refused had he asked for a conveyance. The more just and correct rule would seem to be, -that where the cestui que trust is incapable to take or tó hold the land beneficially, the .right of election does not Nexist, and., consequently, that the property is- to be considered as being -of that species into which it is directed tobe .concerted.
'The case of dfffiT V"distin •“** An; wen may lake, by pur chase, a free hold, or other interest in land and may hold it -against all the world excep the king; and even - against him until office found; and is not accounta ble for . the rents and pro fits previously received.
*588 Having made these observations upon the principles laid down in the case of Roper v. Radcliffe, and upon the argument urged at the bar in support, of them, very few words will suffice to show that, as an authority, it.-is'inapplicable to this case.
The incapacities of a papist under the English statute di 11 and Wm. III. c. 4, and of an alien .at *aw> are extremely dissimilar. ^ The former is incapable to take by purchase, any lands, or profits out of lands ; and all estates, terms, and any other in? ■forests ox profits whatsoever out of lands, to by, mac/e, Suffered, or done, to, or for thé use of such person? or upon any. trust for him., or to, or for the benefit, or, relief.of any such person,^are declared by the statute, to be utterly void.
Thus, it appears' that he cannot even take. His. incapacity is not copfinert to- land, b.u.t. to any profit, interest, benefit, or relief,"in or out .of it. He is not |p?ly disabled .ftom..takiqg.. csr. haying the benefit ofiany *589 Such interest, but the will or deed itself,. which attempts to pass it, is void. Iii. Roper v. Radcliffe, it was strongly insisted, thrft the money given to the papistj which was to be the proceeds of the-land, was a Drofit or interest out of the land.. If this • be so, (and' it is not immaterial in this, case to affirm or deny that position,) tiien the .wiil of John Roper in relation to the bequest to the two papists ioas void under the statute; apd if so, the fight of the heir at law of the testator, to the residue, as a -resubiog trust , was incontestable. The cases above cited have fully established that principle. In that case, too, U16 rents and profits, till the. sale, would, have belonged to the papists, if they were capable of taking, which brought the case still more strongly within the statute ;■ and this was much relied on, not only- in fea • soning upon the words, but the policy of the statute.
Now, what .is the situation of an alien? He can not only take an interest in - land, but a freehold interest in the land itself, and may hold it against all the world but the king, and even against him until office found, and he is not accountable for -the rents and profits previously received.a In this case the will being valid, and the. alien capable of taking under it, there can be no resulting trust to the heir, and the claim of the state is founded solely upon a supposed equity, to have' the land by es’cheatj as if the alien had, or could upon the principles of a court ' of *590 equity have elected io take the land instead of the money. The points of difference between the two case are ,so striking that it would be a waste of time .to notice them in detail.
It may be further observed, that the case of Roper v. Radcliffe has never, in England, been applied to the case of aliens; that if s authority has been'submit' ted to with reluctance, and is. strictly confined in its application to cases precisely parrallel to it. .Lord Mansfield, in.the case-of Foone v. Blount, speaks of it with marked disapprobation; and we know, that had Lord Trevor been present, and declared the opin. ion he had before .entertained, the judges would have been equally divided.
The case of the Attorney General and Lqrd Weymouth, (Ambler. 20.) was also pressed upon the court, as strongly supporting that of Roper v. Radcliffe, and as bearing upon the present case.
- The fiist of these propositions might be ' admitted ; although it is certain that the mortmain act, upon which that case was decided, is even stronger in its expression than the statute against Papists, and the chancellor so considers it; for, he says, whether the surplus be considered as money or land, it is just the ¿ame thing, the statute making void all charges-and encumbrances on land, for the benefit of a charity.
But if this case wege,. in all respects, the same as Roper v. Radcliffe, the observations which have been made upon the latter, would all apply to it. It may be remarked, however, that in this case, the chancellor avoids expressingany opinion upon theques* tiont whether the jjaoney to wise from the sake of *591 the land, was to be taken as personalty or land ; and although he mentions the case of Roper v. Radcliffe, he adds, that he does not depend upon it, as it was imsüateriaí whether the surplus was to bé considered as land or money under the mortmain’ act.
Upbn the whqle, we are unaruinnudy of opinion, that the legacy given to Thomas Craig, in the will of Robert Ciaig, is to be consi.lere.1 as a bequest of personal estate, which he is capable of taking for his own benefit.
Certificate accordingly.

 Vide ante, p. 12. Jackson ex dem. State of New-York v. Clarke, note e.