## GATES ET AL. VS. HUNTER ET AL.

1. Testator died in the State of Kentucky, having devised his real estate to his widow during life or widowhood; by legislative and judicial proceedings had in that State, the widow was empowered to sell the land and invest the proceeds in lands in this State. Held, that the money in the hands of the widow is to be regarded as real estate.

2. A trustee cannot prove by parol testimony, without the aid of the record of the suit itself, the amount of costs incurred in a suit instituted by him to recover the trust money.

3. Where a trustee is required by the terms of the trust to invest a specific amount of money in lands, he is not warranted in investing part as directed, and expending the balance in improving the land purchased, unless peculiar circumstances should require it.

4. If no exception be taken to the decision of the circuit court at the time it is made, the supreme court will not review it.

5. Where by the terms of the trust the trustee is required to invest a certain amount of money in funds for the benefit of persons, part of whom are minors, he should be required to invest the full amount, although a portion of those of full age request to receive their shares in money.

## ERROR to Morgan Circuit Court.

ROBARDS, for plaintiff in error.

1. The court erred in not permitting the defendant, Gist, to prove the amount of costs and expenses paid by her in recovering the money which she held as trustee.

2. The court ought to have required S. P. Hunter to testify as a witness when called upon by the defendant.

3. The court ought to have heard the defendants motion filed, to suppress the deposition of Butler.

4. The decree of the court is palpably against the rights of Mary Gist. The decree finds the facts to be that Michael Chism died leaving eight children living. He devised all his real estate to his widow, the said Mary Gist, during widowhood. That subsequently to his death, his daughter, Sarah, died. That the widow married; then the estate under the will passed to his children and their heirs. The deceased gives to the seven surviving children each a seventh of the whole estate, and to the widow only a life estate in one third. When, in truth, from the facts found to exist by the decree, the estate ought to have been divided into eight parts, giving to each an eighth and the inheritance (one eighth) of Sarah, who died since her father, should have been distributed to the surviving brothers and sisters and to her mother, the said one in equal parts; the decree only gives to Mary Gist a dower interest of one-third part during life, when by the facts set forth in the decree as found, she is entitled *absolutely* to one-eighth of Sarah's interest in addition to dower. In this there is manifest error to the prejudice of Mrs. Gist. Fonblanques Equ. 298, top paging note, 420; 3 Wheaton. 563, 577.

5. The court should not have required Mary Gist to invest any more of the money found in her hands than the shares of the petitioners; and should have permitted the defendants to

receive their part in money. 2 Powell on Devises, p. 37, and cases referred to; 2 Story, pages 101 '2.

6. The court should have sustained the demurrer to the petition. True, it is a petition under the new act, but is a proceeding really under the partition act, and by law no other separate and independent subject should have been blended with the cause of partition.

ADAMS & HAYDEN, for defendants in error.

Judge BIRCH delivered the opinion of the court.

In the year 1835, Michael Chism departed this life in the county of Monroe and State of Kentucky, leaving a will by which his wife, Mary, (since intermarried, and now Mary Gist, one of the defendants in this suit,) was to inherit and hold all his real estate during her widowhood, but in case of her marriage, to take only a dower or life interest of one-third.

Under the authority of an act of the legislature of Kentucky, the sale which the widow had previously made of the lands in that State, seems to have been so agreed upon and confirmed by judicial proceedings there, as to require the investment of the proceeds in lands in this State for the benefit of the heirs, reserving to the widow (who married again some time afterwards) the dower or life interest alluded to.

The sum to be thus invested was eighteen hundred dollars, and the point of complaint in the petition by which the suit was commenced by a portion of the heirs against the widow, and another portion of them, is, that a part of the money has not been invested at all, and that by fraud and collusion between Mrs. Gist (again a widow) and Stephenson Gates, (who married one of the heirs and is one of the defendants,) five hundred and thirty-six dollars of the proceeds of the Kentucky land was applied to the purchase of eighty acres of land from Gates, while the same was, in fact, worth less than one hundred dollars. The petition seeks to set aside this investment, for fraud, to compel a faithful investment of the whole remaining sum, and to partition amongst the heirs certain other lands which had been fairly purchased with a portion of the Kentucky money alluded to.

The decree of the court below was as prayed for, and as the *evidence* upon which it was rendered was amply sufficient to justify it, we will notice only the points of *law* presented by the record.

There can of course be no serious question, that both upon reason and authority, the bequest in the will, although having passed into money under the proceedings in Kentucky, must still be regarded (as the legislature and the court there obviously designed it should be) in the

Gates et al. vs. Hunter et al.

nature of landed or real, instead of personal estate—the rule being that "equity will consider things directed or agreed to be done as having been actually performed, where nothing has intervened to prevent a performance." (3. Wheaton, 578.)

It is complained of, in the next place, that the court refused to hear testimony showing the amount of costs and expenses incurred by Mrs. Gist, in prosecuting a suit in Kentucky for a recovery of a portion of the money which was to be invested in this State. To this it is sufficient to answer, that the circuit judge could not do otherwise than decline to hear the mere oral testimony which was offered respecting an alleged fact, which it was so easy to have verified, or at least to have laid a *foundation* for verifying, by the better testimony of the record of the suit itself, including the bill of cost, and then such oral testimony, in explanation or application, as might have been admissible under the rules of evidence.

It is secondly objected, that the court refused to require Hunter, the father and guardian of two of the infant petitioners, to testify in the case at the instance of the defendants. Gates (one of the defendants) made affidavit that they expected to prove by Hunter, that he (Hunter) was instrumental in collecting the money directed to be invested in Missouri lands—the expense incurred *in* collecting it and transmitting it to the State—that all of it except about the sum of $527, had been invested in lands here, which the heirs had acknowledged by a writing in his possession—and that he (Hunter) had then but recently paid over to Mrs. Gist the residue of said money, which was relied upon as an excuse for not having invested it.

It is deemed unnecessary to enquire or decide to what extent Hunter would or would not have been a competent witness upon the points thus stated, inasmuch as it appears from the bill of exceptions, that "before the cause was disposed of, the respondent's counsel was informed that the objection to the examination of said Hunter had been withdrawn, and that the court was ready to hear his testimony." Of course the witness was yet present in court, (or the bill of exceptions would have been otherwise worded,) and the cause should not be reversed and sent back merely to enable the defendants to introduce a witness as a matter of *right*, which had already been conceded to them as a matter of *privilege*. Such a course would be carrying a mere technicality beyond both the substance and the right.

To the objection that the court refused to hear testimony tending to show the amount of money expended in permanent improvements upon other lands purchased with a portion of the proceeds of the Kentucky

estate, it is sufficient that neither in the will, in the act of the legisla-
ture, in the Kentucky decree, or elsewhere, is there found the slightest
direct authority to make such expenditure, nor does it seem to be pre-
tended that there were any peculiar circumstances which required, or
would even excuse such an expenditure, if indeed, any such was
really made.

The objection which is raised to the action of the court, in refusing
to entertain the defendant's motion to suppress the deposition of Butler,
is not only well enough answered by the counsel for the defendants in
error, (assigning that under the rules of the court in which the trial was
pending, the motion was made too late,) but it is perceived, also, that
no exception was taken at the time to the decision of the court below,
nor any further objection made to the reading of the deposition.  We
need scarcely refer to the numerous adjudications of this court upon
both of these points.

The sixth and seventh reasons assigned by the counsel for the appel-
lant, for granting a new trial may be considered together, being to the
effect that the court should not have required Mrs. Gist to invest any
more of the money found in her hands than the shares of the petitioners;
and should have permitted the defendants to have received their part in
money.   Also, that the court should have sustained the demurrer to the
petition, which, although proceeding under the new practice act, it is
alleged was in fact a proceeding under the partition act, in conformity
to which no other subject could be blended with the prayer for par-
tition.

Upon looking into the decree, it is discovered that the chancellor
directs that the shares of the objecting heirs be set off together, if it
can be so done without detriment to the estate; so that the question
upon this point, when considered in connection with what has been al-
ready said as to the continuing nature of this estate, (partitionable)
resolves itself into the naked enquiry, whether the satisfaction expressed
by a portion of the heirs, and *their* disinclination to any partition or di-
vision, should conclude the discretion of the chancellor as to the rights
of the infant and other petitioners?  We not only think otherwise, but
that in the case before us, the court but soundly and discreetly exer-
cised the general discretion alluded to.

The counsel for the plaintiffs in error, has also brought to our atten-
tion a point which seems not to have been so specifically taken in the
motion for a new trial in the court below, as is suggested by all just con-
ceptions of correct practice, and which, therefore, if it were not so easy
to *modify* the decree in the respect complained of, we might be disin-

clined to entertain at all. It is, that as one of the heirs died during minority, one-eighth part of whose share went properly to the mother, (Mrs. Gist, the principal defendant,) the decree against her should have been for a sum less, by that amount, than it was. Yielding this, and the decree of the chancellor in respect to the further investment of the remaining proceeds of the Kentucky land, would be for the sum of six hundred and forty-five dollars seventy-one and a half cents, instead of six hundred and seventy-three dollars and eighty-four cents.

It is therefore directed that the decree be modified accordingly, and that in all other respects it stand in full force, and that the plaintiffs recover their costs in both courts.