The opinion of the Court was delivered by
Wardlaw, Ch.
The circumstances under which this opinion is prepared, prevent that full discussion which the importance of the interests and principles involved makes desirable, and enable me to do little more than to announce the judgment of the Court.
We are all agreed that the direction of the will to the executors to sell the whole estate, applies only to the “ General Bull estate,” and that the religious societies have no interest *196 beyond this portion. The direction to sell is in the midst of dispositions relating to that special subject, and it is a forced construction to change its collocation with cognate dispositions, and make it applicable to the whole of testator’s estate. It is manifest, from a careful reading of the will, that while the testator intended to dispose of his whole estate, he made very different dispositions as to the two parcels of it: his •estate proper, and the “ General Bull estate.” The former he gives to his wife, and the latter he devotes to charity. That he should make the proceeds of the latter liable to his debts generally, and to a pecuniary legacy to his step-son, is not inconsistent, for he had added to this parcel a very valuable estate. In life, he kept the two parcels distinct and apart, and although we cannot resort to parol evidence, independently of the will, to ascertain the testator’s intention, it is allowable to receive information of his past conduct, and all the circumstances which surrounded him, to point and determine the application of the words used in the will. The intention of the testator must be ascertained, and the construction of his will made, from the terms of the will itself, but we may be aided in fixing the meaning of his terms by his ususet norma loquendi. The direction to sell, of course, could not apply to the estate given to his wife, even for life, and could not, therefore, include his whole estate. In relation to his estate proper, the testator, so far from giving his execu- ‘ tors power to sell, as to the only portion directed to be sold, prescribes that the sale shall be made by an agent of his wife.
There is no general residuary clause in this will, and if the testator has died intestate as to any subject not appurtenant to the General Bull estate, which is directed to be sold and divided, this subject must proceed to his next of kin. It is true, that the word remainder occurs in the directions to the executors for sale, but it is too obvious to need illustration, that the term applies only to the residue of the General Bull estate not sold for cash.
The next question is, whether the Berry Hill tract is in- *197 eluded, as an incident and increment of the General Bull estate, within the power of the executors to sell; and on this point we concur with the Chancellor. In a devise, if there be found two sorts of property, one technically and precisely corresponding to the description of the subject in the devise, and another not so completely answering thereto, the latter will be excluded, although had there been no other property on which the devise could operate, it might be held to comprise the less appropriate subject, 1 Jarm., 720. This is sound doctrine, and for myself I think it was rightly applied in Oxender & Chichester, 3 Taunt., 147, as I have elsewhere said in Lawton vs. Hunt, 4 Rich., 247. But under John Bull’s will no subject whatsoever technically and precisely corresponds to the terms of description in the will, nor any which can be brought within its operation, except in a popular and secondary sense. Usually, and not including cases where, by imposing conditions, testators may create instances of election, a testator can dispose only of his own estate, and not of the estate of another, even of a deceased brother, however respected and lamented; but one may designate his plantation by any appellative he chooses, and devise it by that name. If the testator had said, I devise the estate derived by inheritance from my brother, probably the rule cited would have been applicable, but in fact he says, the estate of my brother, I will, &c. He had the right to denominate, and he did denominate his Savannah River property as the General Bull estate, including Berry Hill, which was mainly paid for from the crops of the plantation inherited from his brother, and the proceeds of the sale of some of the negroes belonging to that plantation. It is unnecessary to add more to the circuit decree on this point.
The. next question is, as to the negroes born after the date of his will from the bodies of the females primarily given to his wife. Two sets of post nati are involved in this inquiry. As to the descendants of Doll, we concur with the Chancellor, and cannot profitably add to his reasoning. As to the ser *198 vants on the Little River farm, I am instructed to deliver the opinion of the Court, (I reserve my own,) approving the conclusion of the Chancellor that the post nati do not pass, and in this particular the decree must stand on its own reasons. The distribution of the fund from this source, however, must be different from that provided in the decree, as our conclusion concerning the effect of the power of sale, excludes the religious societies, and leaves the fund as intestate property to the succession of the next of kin.
Another question is, as to the bequest of $5,000 to testator’s step-son. On this point we differ from the Chancellor. The testator, in the first instance, cheerfully gives this sum of money absolutely to the legatee, and then proceeds to express the desire that no person shall be allowed to deprive him of it during his natural life, and that the legatee himself shall not be allowed to squander the minutest portion of the principal, and be only allowed to use the annual interest. An absolute gift can be reduced in effect only by the clearest expression of the donor’s purpose in the context to limit its effect. Here there is no limitation over of the principal fund, and yet there is distinct manifestation of testator’s purpose to dispose of his whole estate. In similar terms the testator expresses his desire to secure the estate given to his wife, so that no person shall be able to deprive her of it during her natural life. In both instances, we understand the testator as attempting to give the property exempt from its necessary incident of liability for debt, which is impracticable. As to his step-son, probably the couusel or advice not to exceed the annual interest in the use of the legacy, was intended; but we do not perceive any sufficient indication to restrict his right to use it as he pleases. In general, pecuniary legacies bear interest from a year after testator’s death, and we see nothing as to this legacy to justify departure from the general rule.
As to so much of the appeal as relates to the debt of testator to the estate of David Morrow, we decide nothing, *199 except that there shall be no presumption from the appeal or otherwise that the matter was decided against the appellant. The Chancellor intended that this matter should be embraced in the inquiries directed to be made by the commissioner, and we think it safer to reserve judgment until, by report and exceptions, the matter may be more distinctly presented for adjudication.
We may next consider the appeal on behalf of the executor, that he, directed by the will to make the sale, and not the commissioner of the Court, as ordered by the decree, should make the sale of Berry Hill. We consider this appeal to be well taken. When the order for sale of the estate was originally granted, John Bull seemed to be intestate as to his whole estate, and this Court having custody of the estate, properly directed the sale to be made by its own officer; and so far as the order has been executed, it must be supported, and if the executor is dissatisfied with his compensation for trouble and management, his remedy is in the Law Court for extra compensation under the Act of 1789. But as we understand the facts, Berry Hill is still unsold, and as we have adjudged this tract to be parcel of the General Bull estate, which the executors were corrected by the testator to sell, and as there is no charge of insolvency or misconduct made as to the executor, we adjudge that it is his privilege to make the sale of Berry Hill, and that so much of the decretal order as directs it to be made by the commissioner, be rescinded.
The remaining and most important question in the case is as to the capacity of the testator to give the residue of the proceeds of sale of the General Bull estate, to the religious corporations which are the objects of his donation. The right of these corporations to take personalty is not seriously contested, but it is insisted that, as the statutes of wills, 32 and 34 Henry VIII, and our Act of 1733 or 1734, (it is twice printed, in 3 Stat., and of these successive years, at the pages 341, 382,) except corporations from the objects of *200 the devises of land, it is unlawful to bequeath the proceeds of land to corporations. Minute distinction might be made between exceptions in enabling statutes and positive prohibitions, and between the capacity of a testator to give, and of a legatee to take, but I have not leisure to dwell upon them. It was argued for the corporations, that before the statute of wills, by special custom in Kent, retained from ancient Saxon laws, proprietors of lands held in gavelkind, had the right to devise lands ; and that, as by the charters of King Charles II to the lords proprietors of South Carolina, lands were to be held'of the king as of the manor of East Greenwich, in Kent, all lands in South Carolina.are devisable, independently of the statutes of wills and of the Act of 1733. But we have no proof that this special custom authorized devises tp corporations; and if this were conceded, the surrender of the charters to the king about 1727, brought lands here under the general common law of England; and such persons as claim privilege beyond the common law, must prove their right to be excepted from the operation of the system. Hence arose the necessity of passing the Act of 1733, briefly after the surrender of the charters. Again, it is urged that the Act of 1789, prescribing jthe formalities according to which wills of land may be made, but making no mention of t.he devisees, and, of course, omitting the exception as to corporations, amounts to a repeal of the Act of 1733. But there are no inconsistent provisions in the two Acts, and repeals by implication, are little favored, and affirmative statutes, in relation to the same matter, are properly construed in pari materia. We, therefore, assume, that devises of lands to corporations, are inhibited generally, and that particular corporations, claiming right to take lands by devise, must establish their right by their charters, or some other special law proceeding from the legislative authority of this State. But the inhibition, in terms, extends only to devises of lands, and the burden is on the heirs, or next of kin, to demonstrate that a bequest of the proceeds of lands is equivalent to a *201 devise of lands specifically. The English statutes of mort-main are not of force in this State, and our only Act which can be denominated a statute of mortmain, is this Act of 1733. So, too, the statute of 37 Eliz., concerning charities, (which was greatly modified by the statute of 9 Geo. II, commonly called the statute of mortmain,) is not of force here.
The whole issue, therefore, hangs on the extent of the exception in the Act of 1733. There are reasons of policy, which might induce the legislature to enact that lands should not be held in the dead clutch of those who owe no allegiance, and where there is no liability to escheat, which are inapplicable to money or other personalty. It is incident to corporations at the common law, to take personalty by bequest, and this power is not totally or generally recalled by any statute, and it may be conceded, for the purposes of this argument, that they cannot take devises of land without license from the crown, in England, or here without grant from the legislature. Equity considers to be done that which should be done, and regarding the substance rather than the form of a will, considers land to be converted into money wherever testator directs the land to be sold, and nothing intervenes to prevent the execution of the direction on principles of equity. A testator has the power to change the nature of his estate as from realty to personalty, so as to preclude all questions between his heirs and personal representatives. 1 Wins., 551, 554. It is quite true, that if the testator direct the conversion for a purpose, which fails in whole, or in part, the heir is entitled to the whole, or residue, as land. Ackroyd vs. Smithson, North vs. Valle. And that if the conversion be not actually effected by sale, and be not necessary, the beneficial legatee may t.ake, at his option, the land or the proceeds. But these apparent exceptions in no respect limit or qualify the general doctrine of equitable conversion, where it is directed absolutely, or, as the phrase is, out and out, and the conversion is necessary to fulfil the purposes of the testator. Craig vs. Leslie, 3 *202 Wheat., 563. It is argued that this doctrine of equitable conversion applies only between the objects of gift, and not as to the donor; and thus far I approve and follow the argument, and it is further urged that it has no application to the instrument of gift. If no more be meant by this than that there must be, first, a devise established before a conversion can be effected; this too may be admitted as sound doctrine, and established by this very case in the Court of Errors. The vice in the decision of Griffin vs. Matthews, following Wilkins vs. Taylor, 8 Rich., 291, was, that the Court applied the doctrine of conversion to the frame or structure of the instrument, and seeing that the will directed a sale of land, and distribution of the proceeds, allowed the will to be admitted to probate on proof adequate to a testament, yet insufficient to a devise. Here, however, the will has been admitted to probate as a will, and the only question is as to the effect of a devise directing conversion. It is further urged, that as our Act forbids the direct devise of lands to corporations, it forbids what is the same thing in substance, a bequest of the proceeds of lands; and that we tolerate evasion of the policy of the State by allowing bequests of the proceeds of lands. This view is plausibly supported by the decisions in the English Chancery on the statute of 9 Geo. II, which are collected in a note, 2 Fonb., 210. That statute, in express terms, only inhibited gifts of lands and of charges and incumbrances on them, and of money to be laid out in lands, to religions corporations, but in Attorney General vs. Lord Weymouth, Ambl., 20, Lord Ilardwicke determined that a gift of the proceeds of the lands was likewise prohibited on a construction of the enactment in connection with the preamble; and his judgment was followed afterwards in several cases. Unquestionably this construction was attained by considering the spirit and policy of the Act; and one stiff in his notions of construction might well doubt of the propriety of the decision. Yet the terms of that are much more extensive than those in the statutes of wills and our Act; *203 and the decisions proceed expressly on the terms of the statute. 14 Ves., 541. A like conclusion has been attained on the large words of the statute 11 and 12 Wm. III, as to gifts to Papists. Roper vs. Radcliffe, 9 Mod., 167; 10 Mod., 89. So, too, in Delaware, on a statute of 1787, declaring all devises to religious corporations void, a like result was attained. State vs. Wiltbank, 2 Harris, 22. But no case in England on the exception in the statute of wills, nor in New York, where the same exception prevails, nor elsewhere, has been cited to show that the inhibition of a devise of lands also inhibits a bequest of the proceeds. On the contrary, the prohibition of' direct devise of lands has been held not to inhibit the devise of a trust in lands. I regret that I have not time to pursue this investigation further, but Chancellor Jones has fully examined the cases in McCarter vs. Orphan Asylum, 9 Cowen, 437, and a fair summary of the doctrine may be found in Angell & Ames on Corporations, 137, 150.
It may be granted that the corporations to whom the bequests are made must be competent to take not only by the laws of the States which chartered them, but also by the laws of this State. We have endeavored to show that- there is nothing in our law which hinders them to take bequests as corporations, and on looking at their charters by the foreign States, we find nothing to obstruct this capacity. All of them, in substance, are authorized to purchase, hold and convey estate. It may be that the term purchase, although usually including all modes of acquisition, except by descent, should be interpreted as to direct devises of land in a popular sense, so to embrace only acquisitions of land by payment of the price or value; but this is altogether unimportant where the gift is considered a bequest of personalty.
It is ordered and decreed that the circuit decree be modified according to this opinion, and that in other respects the decree be affirmed and the appeal dismissed.
Donicin, Ch., concurred.