# ELIZABETH CROPLEY

## *vs.*

# WILLIAM COOPER ET AL.

1. Where land is directed by will to be sold after the death of the life tenant and turned into money for the payment of legacies, it is to be considered as personal property from the death of the testator, subject to the right of reconversion at the election of the legatees at the time appointed for the sale.

2. Where the *cestui que trust* is entitled to the whole of the trust estate, whether it be land or money, after its conversion, the one into the other, a court of equity will not compel the trustee to make such conversion against the wishes of the *cestui que trust*, but will permit him to take the money or the land, if he elect to do so before the conversion has actually been made, and this election he may make as well by acts or declarations, clearly indicating a determination to that effect, as by application to a court of equity.

3. Where the property directed to be converted is land, the *cestui que trust* by making his election against conversion acquires the right to make a fee simple title to his grantee.

4. Testator devised a lot of ground to his daughter for life with directions that "At her decease the said lot be sold and the proceeds become the property of her children or child, when he, she, or they shall have arrived at the age of twenty-one years, the interest in the meantime to be applied to their maintainance." *Held*, the intent of the testator was that the proceeds of the sale should be divided amongst such of the children as should survive the life tenant and reach the age of twenty-one.

5. In the case above stated all the children died leaving the mother surviving. She thereupon claimed the fee simple on the ground that the legacies were vested legacies and that she as heir of her children became entitled to the property out of which the legacies were to be paid, but it was *held* that the legacies lapsed on the death of the children, and that the remainder after the termination of the life estate had vested in the testator's heirs at law.

6. Where a legacy is given to a class of persons or to the survivor of such a class, to be paid at a future time, there can be no vesting of the legacy till the period of distribution arrives.

7. So where the gift is to a class of persons, and is not immediate, but given at some future period, none can take who are not of that class at the designated period, and it is wholly unnecessary that the testator should direct the legacy to be paid to the survivor or survivors of the class, for that is implied.

8. But where the gift is *in presenti, solvendum in futuro*, to several persons by name, on the death of some it will not go to the survivors, except the will have so directed.

9. Where there is no gift, but in the direction to pay or distribute the proceeds after the death of the life tenant, the legacy is contingent and not vested; nor does it make any difference that the direction is to distribute the residue after the termination of the life estate.

10. Where a legacy is to be raised by the sale of real estate, if the legatee die before the time prescribed for the payment of his legacy, it lapses for the benefit of the heir or devisee.

11. But where the time of payment of the legacy is deferred from regard to the condition of the estate and not that of the legatee, and the legacy is given in the usual form, and not merely by a direction to sell and pay over the fund, the legacy does not lapse.

In Equity. No. 2341. Decided February 17, 1872.

APPEAL from a decree dismissing a bill filed to obtain a construction of a will.

THE FACTS are stated in the opinion.

Messrs. JONES & ASHFORD and W. D. DAVIDGE for complainants.

Messrs. J. H. BRADLEY, Jr., and R. T. MERRICK for defendant.

Mr. Justice WYLIE delivered the opinion of the Court:

William Cooper, the father of the complainant and defendants in this suit, died December 22, 1845, having made a will a few months previously, the proper construction whereof is now sought by the complainant.

At the time of testator's death Mrs. Cropley was married, and had one child, named William Cooper Cropley, and shortly afterwards another child was born, who died in infancy, William lived until he attained the age of twenty-eight, and died in 1870, unmarried and intestate. The father of these children is also deceased. So, that Mrs. Cropley is now both heir and next of kin to her children, as to their real and personal property—if any they had vested in them in their lifetime.

The will in question directs "after my just debts are paid as hereafter pointed out I will and bequeath," &c. There is no declaration of a purpose on the part of the testator, in the usual form, to dispose of "all his property of whatsoever kind," but a simple disposition of certain por-

tions to each of his children, as set out in subsequent parts of the will.

Another unusual feature of this will is that the testator omitted to constitute any one residuary devisee or legatee of such portions of his estate as were not disposed of by the will, or which might afterwards lapse from some contingency.

The particular provision which has given rise to the present controversy is in these words: " To my daughter, Elizabeth Cropley, at her mother's death, I give and bequeath the rent of my house on the Pennsylvania avenue, in the city of Washington, situated in square ——, for and during her life; and at her decease it is my will that the said lot be sold, and the avails therefrom become the property of her children or child when he, she or they shall have arrived at the age of twenty-one years, the interest in the meantime to be applied to their maintenance."

The mother, as well as the children of Mrs. Cropley, being dead, she now claims not only her life estate in the property, but the whole estate in remainder which would have gone to her children had they survived her and attained the age of twenty-one after her death.

The defendants, on the other hand, claim that the legacy to her children, which was to have been raised by a sale of the property after her decease, has lapsed in consequence of their death in her lifetime, and that the remainder in the property sinks into the estate for the benefit of all the heirs of the testator, including as well the complainant as the defendants.

According to the doctrine of equitable conversion the " avails," which were to be realized from the sale of the property at the death of Mrs. Cropley, are to be regarded as personal estate, even from the death of the testator, subject to reconversion at the election of the legatees should they so prefer at the appointed time. See Craig *vs.* Leslie, 3 Wheat., 563, where the court say: " The settled doctrine

of the courts of equity corresponds with this obvious con-
struction of wills as well as of other instruments whereby
land is directed to be turned into money, or money into
land for the benefit of those for whose use the conver-
sion is intended to be made. In the case of Fletcher vs.
Ashburnes, 1 Bro. Ch. Cas., 497, the master of the roll says
that " nothing is better established than this principle; that
money directed to be employed in the purchase of land,
and land directed to be sold and turned into money are to
be considered as that species of property into which they
are directed to be converted, and this in whatever manner
the direction is given." He adds: " The owner of the
fund, or the contracting parties, may make land money or
money land."

The court further say: "A court of equity will not com-
pel the trustee to execute the trust against the wishes of the
cestui que trust, but will permit him to take the money or
the land if he elect to do so before the conversion has
actually been made; and this election he may make, as
well by acts or declarations clearly indicating a determina-
tion to that effect as by application to a court of equity."

If, therefore, the legacy to the children of Mrs. Cropley
was vested at the date of the testator's death, Mrs. Cropley
might, perhaps, even now, as she seeks to do, make her
election against a conversion of the lot into money, and so
acquire the right to make a fee-simple title to a purchaser.

But since her right to make such election depends upon
the question whether the legacy to her children was in fact
vested at the death of the testator, it is necessary to ascer-
tain the law on this point.

The facts that, in the present case, only one child was
living at the death of the testator, and that another child
was subsequently born, who died in infancy, is not material,
since in such case, where a vested legacy is given to a class,
those born after the testator's death are always admitted to
equal participation with the others.

In the usual course of nature children outlive their parents; and this event is the only one which seems to have been present to the mind of Mr. Cooper in making his will, which declares "and at her decease it is my, will that the said lot be sold, and the avails therefrom become the property of her children, or child, when he, she or they shall have arrived at the age of twenty-one years, the interest in the meantime to be applied to their maintenance."

At the death of the testator there was but one child of Mrs. Cropley. The will directs that after the death of Mrs. Cropley, and the sale of the lot, the proceeds shall become the property not of that child alone, but of her children or child, when he, she or they shall have arrived at the age of twenty-one years, etc. The obvious intent of the testator was that the proceeds of the sale should be divided amongst such of Mrs. Cropley's children as should survive her. If but one child survived he was to take the whole. If more than one the proceeds were to be divided between them. It is clear that only those who should be living at the death of Mrs. Cropley were intended to share in the legacy. Suppose, in this case, that one of the children had married and then died, leaving children, and the other survived his mother. Can it be doubted that the latter would have been entitled to the whole? The division of the fund was to be made when the children should arrive at the age of twenty-one, and in the meantime—that is, between the decease of the mother and their arriving at that age the interest was to be applied to their maintenance. Those who were to get the principal, or corpus of the fund, on reaching the age of twenty-one, therefore, were those only for whom the *interim* maintenance was provided, and these could be none other than such children as should survive their mother.

This provision of the will so far as it relates to the point now under consideration without changing its sense, might be read as follows, "And at the death of my said daughter,

Elizabeth Cropley, it is my will that the said lot be sold, and the avails therefrom become the property of her children, or child now born, or who may hereafter be born to her, provided he, she, or they shall survive their said mother.

After a full historical review of all the cases upon this question Mr. Jarman in his work on Wills, 2 Vol. 640, 1 marginal, deduces the following conclusion: "This case, *Doe demise* Long *vs.* Prigg, 8 B. & C., 221," closes the long series of authorities in favor of the construction in question which might seem to have established, if reiterated adjudication could settle any point, that a gift to several objects, as tenants in common, and the survivors and survivor of them, vested the subject of gift absolutely in the objects living at the death of the testator, the words of survivorship being referable to that period.

"The sequel will serve to show that no rule of construction however sanctioned by repeated adoption, is secure of permanence unless founded in principle for the inadequacy of the grounds upon which the rule was established, it is conceived, may be ascribed, not only the frequent agitation of the question, evinced by the multitude of cases just stated, but the sweeping, and, as we shall see, sometimes, groundless exceptions engrafted on it, which at length rendered it doubtful whether such a rule of construction any longer existed, or rather occasioned its total subversion in reference, at least, to personal estate. For the reader, on a perusal of the cases, which remain to be stated, will probably find himself impelled to the conclusion, that where there is a gift of personal estate to a person for life, or any other limited interest, and after the determination of such interest to certain persons *nominatim*, or to a class of persons as tenants in common, and the survivors of them, these words are construed as intended to carry the subject of gift to the objects who are living at the period of distribution. This result, however, was not attained until after many gradations. In the first instance, survivorship was held to relate to the

period of distribution, and not to the death of the testator on the ground that the subject of gift, being the produce of land devised to be sold, was not in *esse* until this period."

From a large number of authorities establishing the rule that where a legacy is given to a class of persons, and the survivors of such class, to be paid at a future time, there can be no vesting, till the period of distribution, it is not deemed necessary to refer to more than a few, which are regarded as quite sufficient to settle the doctrine.

In Brograve *vs.* Winder, 2 Ves., Jr., 634, the facts were these (omitting such as would be here irrelevant) : A testator devised his real estate to A for life, with remainder to trustees to sell, and directed that the money arising from the sale should be equally distributed among the three sons and daughters of W, or the survivor or survivors of them. Lord Loughborough admitted that, in general, these words would not prevent the vesting at the death of the testator, but the circumstances of this will, he said, gave it a different effect." "In this will," he observed, "the penning of which is very particular, when once you fix the intention that they shall take it as money, which is clearly the sense of this will, there is no gift till the distribution; the object of the distribution is pointed out to be among the persons named, or the survivors or survivor. That excludes the possibility of taking in, as objects of the distribution, persons who are dead."

In Newton *vs.* Ayscough, 19 Ves., 534, the doctrine of Brograve *vs.* Winder was again affirmed. Sir William Grant there said: "To what period survivorship is to relate depends not on technical words, but upon the apparent intention of the testator." " Here is a direction to trustees at the death of the tenant for life to sell the fund and divide the produce among his residuary legatees, or the survivor of them, share and share alike. That naturally points to the period of sale as the period to ascertain who are the persons to take."

So in Houghton *vs.* Whitegreave, 1 Jac. & Walk., 146, a testator gave his real and the residue of his personal estate to his wife for life, and after her decease to trustees upon trust to sell the real estate; and directed that the money arising from the sale, as well as the rents from the death of the wife until the sale, as well as the personal estate, should be paid and equally divided among his nephews and nieces after mentioned, and to the survivor and survivors of them, after the decease of his wife, in manner aforesaid. Sir T. Plumer, V. C., said: "The subject matter is not to be converted into money until after the death of the tenant for life. It is then that for the first time any thing is given to the trustees. It is given upon trust to be converted into money, and then to be divided. Thus not only was there no bequest until the widow's death, but the subject matter did not till then exist in the shape and form in which it is given. It is given to these persons, and the survivor and survivors of them, and seems to fall under the general rule that legacies given to a class of persons vest in those who are capable of taking at the time of distribution."

The learned vice-chancellor, in this last sentence, has stated the general rule, perhaps, a little too broadly, but that is not material as affecting the authority of his decision in that case.

The only other case which need be referred to in this connection is that of Wordsworth *vs.* Wood, 2 Beav., 25, which was subsequently affirmed by the House of Lords; and we refer to this case especially for the clearness with which the rule is laid down by Lord Langdale, M. R., as follows:

"The rule is that where an interest is given a person for life, and after his death to his surviving children, those only can take who are alive when the distribution takes place."

Where the gift is to a class of persons, and is not immediate, but given at some future period, none can take who

are not of that class at the designated period. In such case, therefore, it would be wholly unnecessary that the testator should direct the legacy to be paid to the survivor or survivors of the class, for that is implied. But where the gift is *in presenti, solvendum in futuro* to several persons by name, on the death of some, it will not go to the survivors, except the will have so directed.

The reason is that in one case the legatee is obliged to prove his identity with the class at the time of the distribution, else he has no claim, but in the other case the legacy having been given to particular persons by name, there will be no survivorship amongst them, unless that is provided for by the will.

Suppose a testator to devise real estate to his daughter for her life, and direct that at her death the property be sold and the proceeds distributed between her children A, B and C, that would be a vested legacy to each of these children, and if either should die in the lifetime of the mother, his share of the future proceeds of the real estate would go to his personal representative for the benefit of his next of kin. But if the testator intend that the shares should be divided only amongst such of these named children as should be living at the mother's death it would be necessary to give the legacies to the survivors or survivor.

But if the future legacies be given to A, B, C, &c., *nominatim*, but to them as a class under the designation of children, then there is no gift till the period arrives for distribution, for till then it cannot be told who may survive to compose the class, and it is not necessary in such case to provide for survivorship.

The same conclusion may be reached by a line of argument suggested by another feature of the case.

It will be remembered that here we have no legacy given the children of Mrs. Cropley, but in the direction to distribute the proceeds after the death of their mother and the sale of the property. Such a legacy is contingent and not vested.

In Smith on Executory Interests, 151, the distinction is thus stated, "It must be carefully noticed that where there is no gift, but in a direction to pay or transfer or divide among several persons at a future period, though the future period is annexed to the payment, possession, or enjoyment, yet it is also annexed to the devise or bequest itself. For, in this case the direction to pay or transfer or divide constitutes the devise or bequest itself; and therefore the vesting in interest is postponed, and not merely the vesting in possession."

In Saulsbury *vs.* Read, 12 Vesey, 78, Sir William Grant said : "Then some of these children being dead, and as it does not appear that the youngest child has attained the prescribed age, the third question is whether their shares were vested. They are not. They could not vest until the youngest child attained the age prescribed, for there was no substantive gift to them. The only way in which they can claim is under the direction to the executor, ' then to be divided amongst them in equal portions.' Therefore, the time of the division is annexed to the very substance of the gift, which is not an independent gift with a time for payment or distribution appointed afterwards."

So in Batsford *vs.* Kibbell, 3 Ves., 363, the Lord Chancellor said, "In this case there is no gift but in the direction for payment, and the direction for payment attaches only upon a person of the age of thirty-two. Therefore he does not fall within the description."

So also in Goss *vs.* Nelson, 1 Bun., 227, Lord Mansfield said, "There is a known distinction between the time being annexed to the substance of the gift, or to its payment. If complete words of gift direct the executor to pay, the other words only fix the time of such payment, and then the legacy vests and is transmissible, though the legatee should die before the day of payment, as a legacy given to be paid at twenty-one. But if the time is annexed to the substance of the gift, as a legacy "if" or "when" he shall attain

twenty-one, it will not vest before that contingency happens."

The same doctrine was declared, also, in Wadley vs. North, 3 Ves., 366; Dawson vs. Killet; Cromeck vs. Laub, 3 Yo. & Coll., 576; Leake vs. Robinson, Meriv. R., 387. After a critical review of all the decisions the doctrine is thus summed up in 1 Roper on Legacies, 581: "In all the instances which have been produced the corpus of the property was immediately given, and the interest or fund directed to be applied or managed for the benefit of the legatee. If, however, the interest or dividends alone be the subject of bequest until a particular time, and the principal is not sooner taken out of the residue, but directed for the first time to be taken out of it and transferred to the legatee at the end of that period, the intermediate gift of the interest or dividends will not vest the the capital, because the gift and payment of it are one and the same, and it was the intention of the testator to make the gifts of the interest and of the capital separate and distinct, so as to constitute the time appointed for payment of the principal the very essence of the gift of it."

It was pressed upon us at the argument of the cause by the counsel for complainant that this doctrine is not to be applied, where the gift is of a residue after the termination of the life estate, and it has sometimes been thought that Booth vs. Booth, 4 Ves., 399, is authority for the distinction.

In reference to that case Mr. Roper, Vol. 1, 565, says: "The last case must not be considered an authority, that in general a residuary bequest will vest before the event happens upon which it is given. It proves quite the contrary. The whole tenor of Lord Alvanley's argument shows that the gift of a residue, on a contingency, or where there is no gift, but by a direction to transfer it from and after, or at a given event, the vesting will be deferred till the event has happened, unless from particular circumstances (as in the last case) a contrary intention can be collected from the will.

In conformity with this distinction Sir Wm. Grant determined, in Leake *vs.* Robinson, 2 Meriv., 363, that a residuary disposition of real and personal estate upon trust to assign and transfer to such children as shall attain the age of twenty-five, with benefit of suvivorship among them, did not vest before the legatees attained that age." To the same effect are Mackall *vs.* Winter, Ves., 235, 536; Young *vs.* Mackintosh, 13 Sim., 445, and the opinion of Sir James Wigram, V. C., in Parkham *vs.* Gregory, 4 Hare, 396. In this case there was a two fold contingency in the way of vesting. First, that the child, or children, should survive Mrs. Cropley, and second, that they should attain the age of twenty-one.

And although one of the children did attain the required age before his death, yet he attained his age during the lifetime of his mother, and has since died before the happening of the event previous to which the property cannot be sold, or its proceeds given to the children, or child of Mrs. Cropley.

Another difficulty in the way of treating this as a vested legacy, is that it was to be paid from a sale of real estate. As to legacies of this description, it has long been settled, that if the legatee die before the time prescribed for its payment it is lapsed for the benefit of the heir or even of a devisee. The authority establishing the doctrine, and they are very numerous, are collected in Mr. Cox's note to the case of Duke of Chandos *vs.* Talbot, 2 Pr. Wm. In this case it was said by the Lord Chancellor, " As far as the legacy is charged upon the land, so far shall it, on the legatee's dying before the legacy becomes payable, sink, and this is the rule which has of late universally prevailed, be the legatee a child or a stranger." And so far has the doctrine been carried, that a gift of the interest which in ordinary cases vests the legacy, is without any such effect if the legacy is to be raised from the land. See 2 Wms. Exs., 900.

It is true that to this rule there is an exception, where

the time of payment of the legacy is deferred from regard to the condition of the estate, and not that of the legatee, and the legacy is given in the usual form, and not merely by a direction to sell and pay over the funds. But the present case, in our judgment, is plainly under the rule, and not under the exception.

We are, therefore, of opinion that the legacies to the children of Mrs. Cropley have lapsed, that she is vested only with a life estate in the lot in controversy; and that at her death it will pass under the law of descents to the heirs at law of the testator.

Had the testator foreseen the events which have happened in his family since his death, it is probable, he would have made express provision in his will that this piece of his property should go, after the death of Mrs. Cropley, precisely as it must now go under direction of the law.

The fee simple title in this lot was stated at the argument to be now worth more than $40,000.

The life estate of Mrs. Cropley alone, is worth probably more than the absolute title of all the other shares left by the testator to her three brothers and their respective families.

To William he gave the interest on $1,250 stock in the Potomac Insurance Company, of Georgetown, and a vacant lot on Capitol Hill for his life, with remainder to his children.

To John he gave the use of his farm for life, or the interest of its proceeds if it should be sold, and if he should marry and have children, remainder to them to be divided when they should arrive at twenty-one years of age. But in case he should die without lawful issue, the farm or its proceeds, if sold, to be equally divided between his other children.

And to Joseph he left the interest of $1,500 of Alexandria, Va., Corporation stock, and at his death this stock to be equally divided between his children.

John was the only one of the children who was unmarried

at the time of the testator's death. The other three were all married and had families. In the view of the testator John was the only one of them who might die without leaving issue, and the testator was particular to provide for that contingency by directing that 'in that event his share of the property should be divided between his brothers and sisters.

To no one of the children did he give more than a life estate in anything.

Had the testator foreseen it was Mrs. Cropley, and not his son John, who was destined to die without issue, and that even her life estate in the avenue lot was to be worth ten times more than the aggregate value of the shares of all his sons, can there be a doubt that he would have made the same provision by clear and positive language in her case as he made in the other? He neither foresaw, nor did he provide for the event; but the law, which is wiser than the testator, supplies his neglect, and now makes for him a will as just and equitable as any he could have himself devised, had he foreknown all the events in his family which have taken place since his decease.